UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VICTOR SALDANA,

                             Plaintiff,

    -against-


NEW START GROUP, INC., FOOD FIRST, INC.,
and FOOD FIRST HOUSING DEVELOPMENT
FUND COMPANY, INC.,

                         Defendants.
------------------------------------------------------------------------X

Docket No. 14-CV-4049
(CBA) (RLM)


**MEMORANDUM OF
LAW IN OPPOSITION**


## INTRODUCTION

The Defendants respectfully offer the following in Opposition to Plaintiff's

Memorandum of Law which seeks an award of damages in the amount of $5,532.80 together

with legal fees in the amount of $14,017.27. Defendants oppose this application on the

grounds that it is indefensibly excessive, particularly within the context of an action where

the vast majority of Plaintiff's claims were dismissed for failing to meet the requisite burden.


## FACTS

### *Pleadings*

This action was commenced on June 30, 2014 when the first Complaint was filed on

behalf of Plaintiff. After issue was joined and an Answer interposed on behalf of the

Defendants, Plaintiff amended his Complaint on October 29, 2014. That pleading contained

three separate "Counts" being asserted by Plaintiff.

Count I of the Complaint alleged violations of the Fair Labor Standards Act ("FLSA") against the Defendants for their failure to pay overtime to Mr. Saldana and/or to compensate him for working during his lunch break. Count II was brought pursuant to the New York Wage & Hour Law, also alleging that Plaintiff did not receive compensation for working during his lunch break and after his scheduled shift ended. Count III was predicated upon claimed violations of the New York Labor Law asserting that the Defendants failed to pay Mr. Saldana earned wages and wage supplements. The Complaint sought damages in an amount not to exceed $250,000.00. Annexed, as Exhibit "A" is a copy of the Plaintiff's Amended Complaint.

On February 13, 2015, more than six months after the initial Complaint was filed, Plaintiff's counsel forwarded correspondence to the Court advising that a "review of the file" determined the Defendants had violated the New York State Wage Theft Prevention Act ("WTPA") by failing to provide Mr. Saldana a state wage notice as required by statute. Annexed, as Exhibit "B" is a copy of the February 13, 2015 letter.

Rather than engage in motion practice over this issue or even require the Plaintiff to serve his third complaint in the case, the Defendants consented to a Stipulation dated March 24, 2015 wherein the Defendants consented to the Complaint being deemed "amended" to add the claimed violation of the WTPA and the Defendant's Answer was deemed "amended" to deny those allegations. Annexed, as Exhibit "C" is a copy of the Stipulation.

### Pre-Trial Discovery

Thereafter, Pre-Trial Discovery commenced between the parties although, figuratively speaking, it was a one-way street which foreshadowed the evidence or lack thereof presented at trial.

The Defendants provided a complete response to Plaintiff's Request for Document Production and served an Interrogatory Response, which was supplemented to provide the names and positions of twenty employees, and further supplemented to provide a breakdown of every pay-period of Mr. Saldana's employment with the Defendants. This breakdown was calculated by Defendant's Payroll Department solely for the purposes of responding to Plaintiff's Interrogatories. This was accomplished by placing handwritten notations on the documents reflecting precisely how Plaintiff's pay was calculated; the gross amount of pay; all withholdings, and the net pay to Plaintiff.

On June 25, 2015 Alfred Thompson, the President of New Start Group, Inc. was presented for a deposition. This testimony was notable in that Mr. Thompson was unable to refute Plaintiff's claim that Mr. Saldana had not been provided with the wage notice as required by WTPA. Annexed, as Exhibit "D" are pages 25 and 26 of the transcript.[1]

Plaintiff's failed to provide a single document in response to the Defendant's June 16, 2015 Request for the Production of Documents and did not even bother to serve a response to this demand. Given the complete absence of empirical support and/or other corroborating evidence for any of Plaintiff's contentions, Defendant's made the tactical decision not to go forward with Mr. Saldana's deposition, which had been timely and properly noticed.

*Trial*

The trial of this case was held on February 22, 2016. The testimony of Mr. Saldana was the only evidence offered in support of the claims set forth in the Complaint. Mr. Saldana claimed that he worked during and through his one-hour lunch break every single day he was employed by the Defendants. He further testified that he worked exactly one-

---

[1] Exhibit "2" referenced at page 25, line 20, was a blank WTPA notice.

3

hour overtime every day of his employment. There was absolutely no other evidence offered in support of Mr. Saldana's claims. None. No witnesses were called to support Plaintiff's claims.

There were no documents supporting any of Plaintiff's contentions entered into evidence. Similarly, there was nothing to corroborate the allegations in the Complaint either made contemporaneously or at any other period thereafter. Further, Plaintiff was impeached by his own handwritten time records, which did not reflect any of the alleged overtime worked. These records did demonstrate that Plaintiff was properly paid for the hours he worked, including authorized overtime. Also, Plaintiff did not avail himself of a "Grievance" that was available to all New Start Group employees and described in detail in the Employees Handbook.

Alfred Thompson testified on behalf of the Defendants and in addition to explaining the process by which Plaintiff's pay was calculated, described in detail the applicable policies and procedures utilized at New Start Group, Inc. He also confirmed his prior deposition testimony and Plaintiff counsel's letter of February 13, 2015 that he could not recall Mr. Saldana being provided with a notice pursuant to the WTPA.

### *Verdict*

The Court's verdict was rendered on February 26, 2016. With respect to Count I of the Complaint, the Court dismissed this claim holding that Plaintiff failed to meet his burden. Count II was similarly dismissed for the same reasons. Consequently, the Court found that Plaintiff completely failed in proving any of his allegations regarding overtime pay, whether during the lunch break or after the end of his scheduled shift---the FLSA claims were dismissed in their entirety. With respect to Count III Plaintiff was awarded a

total of $266.40 for unpaid vacation pay with that amount also awarded as liquidated damages.

The Court also found for Plaintiff on his claim that he was not provided the mandatory wage notice pursuant to WTPA.

Following the verdict the parties were directed to submit a memorandum of law, affidavits, documents and calculations regarding costs and attorneys fees on the unpaid wage supplement and WTPA.

## ARGUMENT

### I   WTPA

Plaintiff's represent that the Courts are "split" on the issue of applying the WTPA retroactively. In order to complete this tortured analysis, Plaintiff 's counsel equates a 2011 unreported decision from a state trial court with a 2013 holding from the United States Court of Appeals for the Second Circuit.

Given that one decision represents mandatory authority and the other entails a state trial court's attempt to interpret a federal statute it is a misnomer, if not an outright deception, to describe such a scenario as a "split". Later in their analysis, Plaintiff drifts even further from the issue and cites to a New York State Appellate case interpreting a New York City Statute.

In all events, the holding in *Gold v. New York Life Ins. Co., 730 F.3d 137 (2d Cir. 2013)* is dispositive of the issue. In *Gold,* the Second Circuit Court of Appeals affirmed the earlier District Court ruling on the issue and unequivocally held that the 2011 Amendment did not apply retroactively. *Gold at 143; See also; United States v. Kozeny, 541 F3d 166 (2d Cir. 2008).*

5

The Second Circuit cited to the long held principle that "retroactive operation of statutes is not favored by [New York] Courts." *id.* The Second Circuit also held that in order to justify retroactive application requires a clear expression of the legislative purpose. *id; See also; Majewski v. Broadalbin-Perth Cent. School Dist., 91 N.Y.2d 577 (1998).*

The *Gold* Court then engaged in analysis that was wholly omitted from Plaintiff's Memorandum of Law, finding that no clear expression from the legislature that retroactivity was intended. This was based upon the Court's review of the text and legislative history of the 2011 Amendment, which found no support for retroactivity to be applied. Annexed, as Exhibit "E" is a copy of the decision in *Gold v. New York Life Ins. Co.*

Plaintiff's contention that "the most recent revisions to the WPTA are just modifications of the penalties" (*Plaintiff's Memorandum of Law at Pg. "4"*) is similarly inaccurate.

In addition to raising the penalty, these revisions also: repeal the annual Wage Notice Requirement; impose personal liability on Limited Liability Company Members; impose Successor Liability; expands Contractor Liability; increases Investigation Requirements, and; creates an Enforcement Account. (*See A 8106-C, S5885-B, signed into law December 29, 2014.*)

Plaintiff's analysis regarding the retroactive application of the WTPA is incomplete and somewhat misleading. In all events they are wholly unpersuasive and easily dispensed by the Second Circuit's holding in *Gold*, which is mandatory authority to the present case. As Plaintiff fails to demonstrate any legislative intent for the WTPA to be applied retroactively it fails to make the requisite showing for a retroactive application in this case. The *Gold* decision is controlling and there should be no retroactive application of the statute. Consequently the amount at issue is $2,500.00 and not the $5,000.00 sought by Plaintiff.

## II   Legal Fee

In determining what constitutes reasonable attorney's fees, the United States Supreme Court stated that the single most important factor to be considered is the degree of success obtained by the Plaintiff. *Farrar v. Hobby, 506 U.S. 103 (1992).*

In this context the degree of success is not limited to whether Plaintiff prevailed on individual claims but instead must be placed in the context of both the quantity and quality of the relief obtained as compared to what Plaintiff sought to achieve as evidenced in the Complaint are key factors in determining the degree of success achieved. *Barfield v. New York City Health and Hospitals Corporation, 537 F.3d 132, 152 (2d Cir. 2008); Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir. 1997).*

The foregoing is in keeping with the Court's central responsibility to make the assessment regarding attorney's fees reasonable under the circumstances of the case. *Farrar at 114-115, quoting Blanchard v. Bergeron, 489 U.S. at 96 (1989).*

It is interesting albeit completely disingenuous that the Plaintiff's Memorandum of Law twice characterizes the Defendant's actions throughout the litigation as "concede nothing" (Plaintiff's Memorandum of Law at pgs. "2" and "5"[2]) and then completely fails to acknowledge that Plaintiff's Complaint was amended a second time pursuant to a Stipulation wherein the Complaint was deemed "amended" to include Plaintiff's claim under the WTPA. The Stipulation also provided that this claim was deemed "denied" by the Defendants. *See Exhibit "C".*

The net impact of this Stipulation was to allow Plaintiff to amend his Complaint for a second time without having to engage in motion practice; appear at a pre-motion conference, and; actually drafting and serving the Complaint for a third time.

---

[2] There are no page designations in Plaintiff's Memorandum of Law.

The Plaintiff's Amended Complaint contained three separate counts in addition to the later claim regarding the WTPA. *See Exhibits "A" and "C"*.

Plaintiff's failed to recover anything under either the FLSA or alleged violations of the New York Labor Law as the Court dismissed both Count I and Count II of the Amended Complaint. With respect to Count III Plaintiff recovered $266.40 in wage supplements with an equal amount to be paid as liquidated damages. On the WTPA claim Plaintiff was seeking $5,000.00 however that appears to based upon an incorrect legal interpretation by counsel as the controlling case law makes it clear the statute is not to be applied retroactively and, as such, it is respectfully submitted that Plaintiff's recovery is going to be limited to $2,500.00. plus costs and fees.

Under no rational interpretation can the above recovery be considered "successful" particularly when placed in juxtaposition with Plaintiff's Damages Claims contained in the September 8, 2015 Joint Pretrial Order. Annexed, as Exhibit "F" is the Joint Pretrial Order.

In this Order, Plaintiff alleged damages totaling in the amount of $46,100.00 ($5,000. + $2,100 + $19,500 + $19,500 = $46,100); *See Exhibit "F" at page 5*. Their recovery totals $3,032.80 ($2,500 + $266.40 + $266.40 = $3,032.80).

Alternatively stated, Plaintiff prevailed on less than 10% of what was claimed. Given that the degree of success obtained by Plaintiff is the "most critical factor" in a District Court's determination of what constitutes reasonable attorneys fees, *Farrar at 114,* a submission of billing records of three separate attorneys totaling $14,017.27 is anything but "reasonable". Plaintiff's Counsel is seeking an award of legal fees more than 4x their recovery in Court, which is simply impossible to justify under the controlling case law. Further, this does not take into account the amount of fees incurred by the Defendants regarding the vast majority of Plaintiff's claims that were found to be wholly without merit.

Lastly and as will be further expounded upon in the annexed Affirmation in Support; the Plaintiff's Attorneys are claiming to have spent 40.95 hours to prove $266.40 in unpaid wage supplements and the fact that a WTPA notification was not provided to Mr. Saldana. *See Affirmations of Fingold; Abrams and Peacocke.* Annexed, as Exhibit "G" is my Affirmation in Opposition.

## **CONCLUSION**

Based upon all of the foregoing, Defendants respectfully request that the Court's award $3,032.80 in damages together with legal fees not exceeding $1,110.00

Respectfully submitted,

By:_____

THOMAS M. DESIMONE (TMD 0756)
Attorneys for Defendants
44 Wall Street, 12th Floor
New York, New York 10005
Telephone: (212) 461-2278
*tmdesimone@gmail.com*

TO:

Joshua Fingold, Esq.
Attorney for Plaintiff
10 Rockefeller Plaza, , 16th Floor
New York, New York 10020
(212) 837-8490

Teresa Peacocke, Esq.
Attorney for Plaintiff
10 Rockefeller Plaza, 16th Floor
New York, New York 10020
(212) 837-8490

David Abrams, Esq.
Attorney for Plaintiff
305 Broadway, Suite 601
New York, New York 10007
(212) 897-5821

9

# EXHIBIT A

David Abrams, Attorney at Law
299 Broadway, Suite 1700
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Eastern District of New York

_____
                                                    )
Victor Saldana,                                     )
                                                    )
                    Plaintiff,                      )
                                                    )
        - against -                                 )         Case No. 14 cv 4049 (CBA) (RLM)
                                                    )
New Start Group Inc.; Food First, Inc.; and         )
Food First Housing Development Fund                  )
Company, Inc.;                                       )
                                                    )
                                                    )
                                                    )
                    Defendants.                     )
_____)

## AMENDED COMPLAINT

        Plaintiff, complaining of the Defendants by his attorney, David Abrams, Attorney

at Law, respectfully sets forth and alleges as follows:

**I.        Introduction**

1.        This is an action for unpaid overtime under the Fair Labor Standards Act

("FLSA") and New York Wage & Hour Regulations.

**II.        Parties**

2.        Plaintiff Victor Saldana ("Plaintiff" or "Mr. Saldana") is a natural person residing

in the State of New York, County of New York.

3.      Upon information and belief, Defendant New Start Group, Inc. (the "Primary Employer") is a New York corporation with a principle place of business in the State of New York, County of Kings.

4.      The Primary Employer is in the business of operating and managing buildings.

4a.     The remaining Defendants (the "Joint Employers") are all New York corporations with principle places of business in the State of New York, County of Kings.

**III.    Venue & Jurisdiction**

5.      Venue in the Eastern District of New York is appropriate pursuant to 28 U.S.C. Section 1391(b)(1) and 28 U.S.C. Section 112(b) in that the Primary Employer has a continuous and systematic presence in the Eastern District of New York.  More specifically, the Primary Employer's principle office is located at 50 Greene Avenue, Brooklyn NY 11238.  The Joint Employers are located in the State of New York.

6.      Subject matter jurisdiction over this action exists pursuant to 28 U.S.C. Sections 1331 and 1367 in that a claim is made that arises under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. Section 201 et seq.  The remaining claims arise from the same case or controversy in that thrust of this case is that the Defendants have failed to pay overtime and other wages to the Plaintiff.

7.      Personal jurisdiction exists over the Defendants in that this action arises from their  activities in New York, specifically the employment of the Plaintiff.  Further, all of the Defendants are located in New York.

**IV.    Background**

8.      Mr. Saldana was employed by the Primary Employer in a property manager position for approximately 1 1/2 years until his job ended in 2013.  His  rate of pay

2

approximately ranged from approximately $15 per hour (at the start of his employment) to approximately $22 per hour (at the end of his employment).

9.      Mr. Saldana regularly worked in excess of 40 hours per week, but was paid for only 35 hours.  More specifically, Mr. Saldana typically worked from Monday to Friday. Although his core hours were from 9 to 5, he typically started work at approximately 8:15am and completed work at approximately 6:30 or 7:00pm.

10.     Mr. Saldana complained to the Primary Employer about his extra uncompensated hours and was advised that he was not entitled to extra pay since he was on salary.

11.     However, Mr. Saldana's pay was subject to reduction based on the quantity of work.  For example, for the pay period ending August 4, 2012, Mr. Saldana was paid for only 58 hours, i.e. he was docked.

12.     Accordingly, Mr. Saldana should have been paid overtime for the weeks in which he worked more than 40 hours.  Further, he should have been paid his hourly rate for hours worked between 35 and 40.

12a.    The Joint Employers are all connected to the Primary Employer in terms of control, labor relations, and sharing of resources.

12b.    For example, all of the Defendants are controlled by the same individual who serves as the primary officer -- Mr. Thompson.

12c.    Further, all of the Defendants share the same office space, telephone numbers, and office equipment and supplies.

12d.    Further, the Defendants share employees, e.g. an employee might be formally on the payroll of one Defendant but perform services for another Defendant.

3

12e.    Moreover, the Defendants' management of labor is intertwining and interrelated. For example, a manager from one of the Defendants might supervise employees who were performing services for another Defendant.

12f.    Indeed, all of the Defendants work together for a common purpose of owning, managing, and operating various buildings in the City of New York.

12g.    Formally, Defendant Food First Inc. owns a corporation which is the managing general partner of Defendant Food First Housing Development Fund Company, Inc.; Defendant Food First Housing Development Fund Company, Inc. in turn owns Defendant New Start Group, Inc.

12h.    Since the Primary Employer is for-profit and therefore subject to taxation, Mr. Thompson – who controls all of the Defendants – has apparently set things up so as to minimize the Primary Employer's stated revenues while still maximizing the revenues which accrue to the enterprise as a whole.

**V.    Causes of Action and Demand for Relief**

<u>Count One: Violation of the Fair Labor Standards Act</u>

13.    The allegations contained in the preceding paragraphs are incorporated as if restated herein.

14.    At all times relevant to this Pleading, the  Primary Employer's annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).  Alternatively,  as an enterprise the Defendants' gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

4

15.     Further, employees of the Primarily Employer regularly handled goods which had travelled in commerce.  For example, Mr. Saldana handled equipment and supplies which had crossed state lines.

16.     Accordingly, the Primariy Employer is a covered employer under the Fair Labor Standards Act.

17.     The Primary Employer violated the Fair Labor Standards Act in that it failed to pay a proper overtime premium to Mr. Saldana.  Further, the Joint Employers are liable as joint employers of Mr. Saldana.


#### Count II:      Violation of New York Wage & Hour Law

18.     The allegations contained in the preceding paragraphs are incorporated as if restated herein.

19.     Mr. Saldana was an employee of the Primary Employer and the Joint Employers within the meaning of the New York Minimum Wage Act and accompanying regulations.

20.     The Defendants were employers within the meaning of those same regulations.

21.     The Defendants violated the above regulations in that they did not pay Mr. Saldana properly for some or all of his overtime work.

#### Count III:      Violation of New York Labor Law

22.     The allegations contained in the preceding paragraphs are incorporated as if restated herein.

23.     The Defendants violated the New York Labor Law by failing to pay earned wages and wage supplements to Mr. Saldana.

5

WHEREFORE  Mr. Saldana demands judgment against the Employer in the amount of

his unpaid overtime, unpaid wages and wage supplements together with appropriate

liquidated and other multiple damages, costs, fees, interest; and such other and further

relief that the Court deems just in an amount not to exceed $250,000.

Respectfully submitted,

/s/ David Abrams

_____

David Abrams
 Attorney for Plaintiff
Saldana

299 Broadway, Suite 1700
New York, NY 10007
Tel. 212-897-5821

Dated:        New York, NY
              October 29, 2014

6

**EXHIBIT B**

**David Abrams, Attorney at Law**
299 Broadway, Suite 1700, New York, NY 10007
Tel. 212-897-5821 Fax 212-897-5811

February 13, 2015

To:   Hon. Roanne L. Mann                                    (by ECF)
      United States District Court
      Eastern District of New York
      225 Cadman Plaza East
      Brooklyn, NY 11201

Re:   Saldana v. New Start Group, Inc., Case No. 14 cv 4049 (CBA) (RLM)

Dear Judge Mann:

        This office represents the Plaintiff in the above-referenced matter.  I am writing to seek leave to file a motion to amend the Complaint in this matter.  Since this is a non-dispositive motion, I am addressing it to Your Honor.

        By way of background, this matter is a wage/hour dispute.  Although I have served some discovery requests, I have yet to receive any responses.  As of yet, the Defendants have not served any discovery requests.  Accordingly, the case is still in its preliminary stages.

        In the course of reviewing the file, it has come to my attention that the Defendant in this matter apparently failed to give my client a state wage notice as required by the Wage Theft Prevention Act ("NYWTPA").  Accordingly, I would like to amend the Complaint to seek statutory damages as provided in the NYWTPA.  Given the status of the case, the Defendant would not be prejudiced in any way by this amendment.

        I have reached out to opposing counsel to seek his consent regarding this proposed amendment; unfortunately the Defendant has refused to consent.  Accordingly, I respectfully am seeking leave to file the motion with the Court.

                                        Respectfully yours,

                                        /s/ David Abrams

                                        David Abrams

cc:   Paul Golden, Esq.                 (by ECF)

**EXHIBIT  C**

SUBJECT TO EXECUTION

United States District Court
Eastern District of New York

| | |
|---|---|
| Victor Saldana, | ) |
| Plaintiff, | ) |
| - against - | ) Case No. 14cv4049(CBA)(RLM) |
| New Start Group Inc. et al, , | ) |
| | ) **STIPULATION** |
| Defendant. | ) |

It is hereby stipulated and agreed as follows:

1.   The Amended Complaint is hereby deemed amended to add a count against Defendant

New Start Group Inc. alleging a violation of the disclosure requirements of the New York Wage

Theft Prevention Act and seeking statutory damages for the same.

2.   The Defendants' Answer is hereby deemed amended to deny the added allegations.

David Abrams, Attorney at Law
Attorney for Plaintiff
299 Broadway Suite 1700
New York, NY 10007
Tel. 212-897-5821

Dated: March __, 2015
New York, New York

Thomas M. DeSimone, Esq.      (TMD 0756)
44 Wall Street, 12th Floor
New York, NY 10005
Tel. 212-461-2278

Dated: March 24, 2015
New York, NY

**EXHIBIT  D**

1                          THOMPSON

2        A.   I believe he performed it

3    exclusively for New Start Group Inc. for the

4    period of time that he did.

5        Q.   Before he performed those services,

6    did he perform some other kinds of services?

7        A.   I remember it was at one point he

8    was a security supervisor.

9        Q.   Was that for New Start Group Inc.,

10   Food First HDFC Inc., Food First Inc. or

11   someone else?

12       A.   I believe it was for New Start Group

13   Inc.

14       Q.   Did he ever perform services for

15   Food First HDFC Inc.?

16       A.   Not that I'm aware of.

17       Q.   Did he ever perform services for

18   Food First Inc.?

19       A.   Not that I'm aware of.

20            (Whereupon, a document was marked

21            as Plaintiff's Exhibit 2 for

22            identification as of this date.)

23       Q.   Showing you a document that has been

24   marked as Plaintiff's Exhibit 2.   I'm going

25   to ask you to take a look at it and tell me

1                         THOMPSON

2      if you've ever seen this type of document

3      before?

4          A.   Yes.

5          Q.   When did you see it?

6          A.   I don't remember what day I saw it.

7          Q.   Do you know if a document like this

8      was ever given to my client?

9          A.   I wouldn't know that.

10         Q.   Do you know who would know?

11         A.   Somebody in human resources.

12         Q.   When my client worked for New Start

13     Group Inc., did he work out of the same

14     facility as you or somewhere else?

15         A.   At some point in his employment I

16     know he worked in my facility.

17         Q.   What point was that?

18         A.   Sometime in 2013.

19         Q.   For how long?

20         A.   A few months.

21         Q.   Did you have occasion to observe the

22     days and hours he worked?

23         A.   When I'm in the country, yes.

24         Q.   You travel a lot, is that right?

25         A.   Yes.   That's correct.



SUBJECT TO EXECUTION

United States District Court
Eastern District of New York

Victor Saldana,

                Plaintiff,

      - against -

New Start Group Inc. et al, ,

              Defendant.

Case No. 14cv4049(CBA)(RLM)

**STIPULATION**

It is hereby stipulated and agreed as follows:

1.     The Amended Complaint is hereby deemed amended to add a count against Defendant New Start Group Inc. alleging a violation of the disclosure requirements of the New York Wage Theft Prevention Act and seeking statutory damages for the same.

2.     The Defendants' Answer is hereby deemed amended to deny the added allegations.

David Abrams, Attorney at Law
Attorney for Plaintiff
299 Broadway Suite 1700
New York, NY 10007
Tel. 212-897-5821

Dated: March __, 2015
     New York, New York

Thomas M. DeSimone, Esq.  (TMD 0756)
44 Wall Street, 12th Floor
New York, NY 10005
Tel. 212-461-2278

Dated: March __, 2015
     New York, NY

**EXHIBIT  E**

## 730 F.3d 137 (2013)

**Avraham GOLD, Individually, on behalf of all others similarly situated, Plaintiff-Appellant,**

**v.**

**NEW YORK LIFE INSURANCE COMPANY; New York Life Insurance and Annuity Corporation; New York Life Insurance Company of Arizona; John Does 1 through 50, said names being fictitious individuals; ABC Corporations 1 through 50, said names being fictitious companies, partnerships, joint ventures and/or corporations; and New York Life Securities, LLC f/k/a New York Life Securities, Inc., Defendants-Appellees.**

Docket No. 12-2344-cv.

### United States Court of Appeals, Second Circuit.

Argued: April 3, 2013.

Decided: September 18, 2013.

139    *139 John Halebian, Lovell Stewart Halebian Jacobson LLP, **New York**, NY (Adam C. Mayes, on the briefs), for Plaintiffs-Appellants.

Richard G. Rosenblatt, Morgan Lewis & Bockius LLP, Princeton, NJ (Sean P. Lynch, Morgan Lewis & Bockius LLP, Princeton, NJ; Michael L. Banks, Morgan Lewis & Bockius LLP, Philadelphia, PA, on the brief), for Defendants-Appellees.

Richard G. Rosenblatt, Morgan Lewis & Bockius LLP, Princeton, NJ (Sean P. Lynch, Morgan Lewis & Bockius LLP, Princeton, NJ; Michael L. Banks, Morgan Lewis & Bockius LLP, Philadelphia, PA, on the brief), for Defendants-Appellees.

Before: B.D. PARKER, LOHIER, and CARNEY, Circuit Judges.

BARRINGTON D. PARKER, Circuit Judge:

Plaintiff-Appellant Avraham **Gold** appeals from a judgment of the United States District Court for the Southern District of **New York** (Pauley, J.) dismissing his complaint based on the so-called "home state exception" to federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711-15. The home state exception requires district courts to "decline to exercise" jurisdiction over class actions in which two-thirds or more of the class, and the primary defendants, are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B).

In 2009, **Gold** sued his former employer, **New York Life** Insurance Company ("**New York Life**"), both individually and on behalf of a putative class of insurance agents, alleging state law claims seeking unpaid overtime wages and recovery of improper wage deductions. See N.Y. Lab. Law §§ 663, 193, and 198(1-a). He also sought statutory liquidated damages under **New York** Labor Law. The case was litigated for a

number of years during which the district court granted summary judgment to **New York Life** on **Gold's** overtime claim, denied **Gold** summary judgment on his wage deduction claim, and ruled that a 2011 amendment to **New York** Labor Law that increased the amount of recoverable liquidated damages did not apply retroactively. In 2012, **New York Life** moved to dismiss the complaint based on CAFA's home state exception. Concluding that the exception applied, the district court dismissed the complaint.

**Gold** appeals, contending that **New York Life** waived the home state exception by failing to raise it within a reasonable time. For the reasons that follow, we hold that CAFA's home state exception is not jurisdictional and must be—and in this case was—raised within a reasonable time. We also hold that the 2011 amendment to **New York** Labor Law is not retroactive and that the district court's grant of partial summary judgment with respect to **Gold's** overtime claim was correct.

## BACKGROUND

140   **New York Life** is a mutual insurance company that sells **life** insurance and other *140 financial products. Joint Appx. 861. **Gold** was employed as an insurance agent at the company's **New York** office from December 2001 to August 2004. Joint Appx. 30. It is not disputed that throughout **Gold's** employment, **New York Life** classified him as an outside salesman whose main responsibility was to sell insurance. Under **New York** Labor Law, outside salesmen are not entitled to overtime pay. *See* 12 NYCRR § 142-2.2 (by reference to 29 U.S.C. § 213(a)(1) which exempts outside salesmen (as defined in 29 C.F.R. § 541.500) from Fair Labor Standards Act ("FLSA") overtime provisions).

When **Gold** started with **New York Life**, he was licensed to sell **life** insurance as well as annuities. Later, he obtained licenses which allowed him to also sell products with investment components and permitted him to use the title "registered representative." Joint Appx. 868-69. To make sales, **Gold** was trained by **New York Life** to follow a six-step process that included researching a client's needs, recommending products to meet those needs, and ultimately selling the client those products. Joint Appx. 169-70. As a registered representative, **Gold** was obligated to also comply with Financial Industry Regulatory Authority ("FINRA") regulations ensuring that he only recommended products that were suitable for his clients. *See* FINRA Manual, Rule 2111 (Suitability Rule).

While at **New York Life**, **Gold's** wage consisted solely of commissions on sales. He was not paid a salary or an hourly wage. **New York Life** used a so-called "ledger-based" payment system under which an agent, including registered representative, would receive credits for commissions he earned and debits for expenses he incurred such as for use of **New York Life's** telephone services and office space. Joint Appx. 307, 311-12, 591. At the end of each bi-weekly pay period, **New York Life** would issue the agent a paycheck that netted the credits on his ledger against the debits. Joint Appx. 14, ¶¶ 12-24. In 2009, **Gold** sued **New York Life** in a putative class action, predicating jurisdiction on CAFA, and asserting that because he was responsible for making investment recommendations to clients, he should not have been classified as an outside salesman and denied overtime pay. *See* N.Y. Lab. Law § 663. He also alleged that because **New York Life's** payment system involved subtracting costs incurred from commissions earned, it violated

**New York** Labor Law § 193, which prohibits employers from making deductions from, and charges against, wages.

In May 2011, the district court granted **New York Life** summary judgment on **Gold's** overtime claim, holding that there was no genuine dispute of material fact as to whether **Gold's** primary duty was sales and therefore whether he was properly classified as an outside salesman and excluded from overtime pay. *Gold v. New York Life Ins. Co., No. 09-Civ-3210, 2011 WL 2421281, at \*6 (S.D.N.Y. May 19, 2011)*. In August 2011, proceeding on the wage deduction claim alone, **Gold** moved to add a claim for liquidated damages

141      under **New York** Labor Law.[1] *See* N.Y. Lab. Law § 198(1-a). The liquidated damages statute \*141 had been amended earlier in 2011 to increase the amount recoverable from 25% to 100% of any underpayment. S.B. 8380, 233rd Legis., Reg. Sess. (N.Y.2010). The district court permitted **Gold** to add the liquidated damages claim but ruled that he could not benefit from the amendment because it was not retroactive. *Chenensky v. New York Life Ins. Co., No. 07-Civ-11504, 2012 WL 234374, at \*2-3 (S.D.N.Y. Jan. 10, 2012)*. The district court also denied **Gold** summary judgment on his wage deduction claim, concluding that factual disputes remained as to whether **Gold's** commission constituted an earned "wage," from which any deductions would violate **New York** Labor Law § 193. *Id.* at \*5.

After the summary judgment rulings, and nearly three years after the complaint had been filed, **New York Life** asserted that it had discovered that more than two-thirds of the putative class members were **New York** citizens. Arguing that the requirements of CAFA's home state exception had been met, it then moved to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, for the court to decline jurisdiction. In response, **Gold** claimed that **New York Life's** delay in raising the issue constituted waiver. **New York Life** contended that the exception was jurisdictional and could not be waived. In the alternative, **New York Life** argued that its delay was justified by the discovery schedule, requested by **Gold** and imposed by the court, that required the parties to complete all individual discovery before commencing class discovery. **New York Life** reasoned that because it was forced to wait until all individual discovery was complete—in 2011—to start class discovery, it could not have determined any earlier that more than two-thirds of the class consisted of **New York** citizens.

The district court concluded that the exception was not jurisdictional and that **New York Life** had not waived the issue because its delay was justified by the discovery schedule. *Gold v. New York Life Ins. Co., No. 09-Civ-3210, 2012 WL 1674300, at \*3-4 (S.D.N.Y. May 14, 2012)*. Because it was not disputed that the home state exception applied if the issue had not been waived, the district court declined to exercise jurisdiction and dismissed the complaint. *Id.* at \*1, 4. This appeal followed.

## DISCUSSION

## I. CAFA's Home State Exception

CAFA confers original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity, *i.e.,* where at least one plaintiff and one

defendant are citizens of different states. 28 U.S.C. § 1332(d)(2). CAFA includes several exceptions, including the home state exception which provides that: "[a] district court shall decline to exercise jurisdiction... over a class action in which... two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The district court, relying on _Graphic Communications v. CVS Caremark Corporation,_ 636 F.3d 971, 973 (8th Cir.2011), and _Morrison v. YTB International, Inc.,_ 649 F.3d 533, 536 (7th Cir. 2011), held that the home state exception was not jurisdictional because the "'decline to exercise'" language "'inherently recognizes [that] the district court has subject matter jurisdiction'" but must actively decline to exercise it if the exception's

142    requirements are met. **_Gold,_** 2012 WL *142 1674300, at *2 (quoting _Graphic Commc'ns,_ 636 F.3d at 973). Reviewing this issue _de novo,_ we agree with the district court's conclusion, and align our Circuit with the Seventh and Eighth Circuits, in concluding that Congress's use of the term "decline to exercise" means that the exception is not jurisdictional.

**Gold** argues that if the exception is not jurisdictional, it must be raised within a reasonable time, and that **New York Life** failed to do so and thereby waived the exception. We agree with **Gold** and hold that parties invoking the exception must do so within a reasonable time. However, we further hold that **New York Life** did so and therefore did not waive the exception.

In _Graphic Communications,_ the defendants removed a case alleging various drug pricing claims from state to federal court, invoking federal jurisdiction under CAFA. The plaintiffs, relying on another of CAFA's exceptions—the local controversy exception, which also includes the "decline to exercise jurisdiction" language —moved to remand the case to state court. The district court agreed that the exception applied and remanded the case. The defendants appealed, contending that the motion to remand had not been timely. CAFA contains no time limit for when remand motions must be made. The Eighth Circuit held that remand motions based on CAFA must be raised within a reasonable time. _See Graphic Commc'ns,_ 636 F.3d at 973-74. We believe that this approach is sound and similarly hold that motions to dismiss under CAFA's home state exception must also be made within a reasonable time. _Cf. Hamilton v. Atlas Turner, Inc.,_ 197 F.3d 58, 62 (2d Cir.1999) (affirming that defendant waived its objection to personal jurisdiction by failing to timely raise it through a motion to dismiss, although the federal rules provide no time limit for such motions). While what is reasonable will vary according to the relevant facts, it is preferable that such motions be made at the earliest practicable time. _See Snapper, Inc. v. Redan,_ 171 F.3d 1249, 1257 n. 18 (11th Cir.1999) (noting that if a remand is based on an issue that "is generally apparent from the time of removal," the "reasonable time may be significantly shorter").

Here, nearly three years after the complaint was filed, **New York Life** moved to dismiss based on the home state exception. Under most circumstances we would have serious doubts that a delay of this length could be deemed reasonable. But, the application of the exception was, to a certain extent, complicated by the discovery schedule imposed by the district court. **Gold** had requested that individual discovery proceed first, followed by class discovery. The court agreed, and as a result, class discovery did not start until 2011. **New York Life** claimed that it learned only through class discovery that more than two-thirds of the class—**New**

**York Life** agents employed in **New York**—were **New York** citizens, and then moved to dismiss based on the home state exception. **Gold** contended that **New York Life's** delay was excessive and that consequently, the exception had been waived. The district court disagreed. It held that because of the agreed upon bifurcated discovery plan, **New York Life** had not had the opportunity to discover the citizenship of class members until it undertook class discovery in 2011 and that, under these circumstances, **New York Life's** delay was excused. 2012 WL 1674300, at *4.

143

We note at the outset that we are skeptical of the contention that nearly three years is a reasonable time for an employer to determine where its sales force lives, particularly where, as here, the sales force in question is limited to those who worked in the very "home state" at issue. However, *143 we review the district court's determination for abuse of discretion. Cf. _Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist._, 673 F.3d 84, 99 (2d Cir.2012) (reviewing abstention rulings for abuse of discretion). Because the district court is in a better position than we are to evaluate when **New York Life's** motion could have been made, based on its greater familiarity with the course of the litigation, especially scheduling and discovery matters, we are not prepared to say that the district court abused its discretion. We will only note that there are numerous instances where the home state exception was raised much more promptly than it was in this case, and without full blown class discovery.[2]

## II. Retroactivity of 2011 Amendment to New York Labor Law

Prior to November 2009, **New York** Labor Law's liquidated damages provision provided that if a plaintiff proved that an employer's failure to pay a required wage was "willful," the plaintiff could recover "an additional amount as liquidated damages equal to twenty-five percent of the total wages found to be due him." N.Y. Lab. Law § 198(1-a) (Consol.2008). Effective November 24, 2009, the statute was amended to impose a presumption of liquidated damages, but permit an employer to avoid the penalty by establishing that it had acted in good faith. A.B. 6963, 232nd Legis., Reg. Sess. (N.Y.2009). The amendment expressly stated that it would only "apply to offenses committed on or after such effective date." _Id._ On April 9, 2011, the statute was amended again to raise the amount of recoverable liquidated damages from 25% to 100% of any underpayment. S.B. 8380, 233rd Legis., Reg. Sess. (N.Y.2010). Unlike the 2009 amendment, the 2011 amendment included no language providing that it would have only prospective effect and, consequently, **Gold** argues, the amendment is retroactive. The district court disagreed and held that the 2011 amendment did not apply retroactively. Based on our _de novo_ review, see _United States v. Kozeny_, 541 F.3d 166, 171 (2d Cir.2008), we hold that the district court was correct.

Generally, "retroactive operation of statutes is not favored by [**New York**] courts" and it "takes a clear expression of the legislative purpose to justify a retroactive application." _See Majewski v. Broadalbin-Perth Cent. School Dist._, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998)). Under **New York** law, to determine if such a purpose exists, courts look to the text of the legislation at issue. _See id._ at 583-84, 673 N.Y.S.2d 966, 696 N.E.2d 978. If the text is not clear, courts then look to the legislative history. _See id._ Based on our review, we see no clear expression of retroactivity. Indeed, neither the text nor the legislative

144  history mentions retroactivity. _See_ S.B. 8380, 233rd Legis., Reg. Sess. (N.Y.2010) (providing *144 only that

"this act shall take effect on the one hundred twentieth day after it shall have become a law"); NY Bill Jacket, 2010 S.B. 8380, Ch. 564; NY S.B. Summ., 2010 S.B. 8380, Nov. 9, 2010; **New York** Spons. Memo., 2010 S.B. 8380, Oct. 28, 2010, 233rd Legislature, 2010 Regular Session.

Faced with no support for retroactivity in the text or legislative history, **Gold** contends that, because the statute is remedial, under **New York** law, any amendments to it are presumed to have retroactive effect. That contention, however, does not reflect the current state of **New York** law. The **New York** Court of Appeals has noted that, although amendments to remedial statutes were once presumed to be retroactive, the classification of a statute as "remedial" no longer automatically overcomes the strong presumption against retroactivity and that a better guide for discerning the intent of the legislature is text and history. _Majewski,_ 91 N.Y.2d at 584, 673 N.Y.S.2d 966, 696 N.E.2d 978; _see also CFCU Cmty. Credit Union v. Hayward,_ 552 F.3d 253, 262 (2d Cir.2009). Because there is no support for retroactivity in either the text or the legislative history, we hold that the 2011 amendment is not retroactive.[3]

## III. Summary Judgment

The district court held that there was no genuine dispute as to a material fact that **Gold's** primary responsibility was to sell insurance and that, consequently, he was properly classified as an outside salesman not entitled to overtime pay. Ordinarily, "[a] grant of partial summary judgment that resolves only some of the issues raised by a complaint is not an appealable final judgment." _West v. Goodyear Tire & Rubber **Co**.,_ 167 F.3d 776, 781 (2d Cir. 1999). However, "[u]pon appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable." _Id._ (alteration in original, citations and internal quotations omitted). Our review is particularly warranted given the preclusive effects of such a ruling over future claims. _See, e.g., Gentile v. MCA Records, Inc.,_ 17 A.D.3d 264, 793 N.Y.S.2d 407 (N.Y.App.Div.1st Dep't 2005). Consequently, we review the district court's summary judgment ruling granting summary judgment as to **Gold's** overtime claim _de novo_[4] and agree with its conclusion. _See In re Novartis Wage & Hour Litig.,_ 611 F.3d 141, 150 (2d Cir. 2010) (_abrogated on other grounds by Christopher v. SmithKline Beecham Corp.,_ ___ U.S. ___, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012)).

145      *145 "Outside salesmen" are exempted from **New York** Labor Law's overtime requirements. "Outside salesm[e]n," are defined as employees:

> (1)Whose primary duty is: (i) making sales ...; or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a) (defining "outside salesmen" as authorized by FLSA exemption provision, 29 U.S.C. § 213(a)(1)); _see_ 12 NYCRR § 142-2.2 (noting that **New York** Labor Law's overtime provision is subject to FLSA exemptions). The applicable regulations further provide that the "determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of

Case 1:14-cv-04049-CBA-RLM   Document 50   Filed 03/25/16   Page 32 of 57 PageID #: 197
3/24/16 5:28 PM

the employee's job as a whole." 29 C.F.R. § 541.700.

Our review of the record before the district court confirms that **Gold's** primary duty was selling insurance. He was hired and trained by **New York Life** to sell insurance. Joint Appx. 879, ¶ 29, 902-09, ¶¶ 59-72. His compensation as well as his continued affiliation with the company was tied exclusively to his sales. Joint Appx. 866-67, ¶¶ 7-8, 914-15, ¶¶ 80-83. He was responsible for maintaining his own client lists, and he conceded that he was regularly engaged away from his employer's place of business as his responsibilities were to "go out, meet people" and "close deals." Joint Appx. 901-02, ¶¶ 57-58.

Although **Gold** argues that research and making investment recommendations were his primary duties, even in the light most favorable to **Gold**, these duties were merely components of **New York Life's** six-step process for selling insurance. *See* Joint Appx. 169-70 (describing that in order to ultimately sell insurance products, agents should research clients' financial situations and based on that research, recommend products to them). **Gold** also argues that because he was a registered representative and thereby subject to FINRA's requirements that he provide sound investment advice, he was a financial advisor, not a salesperson. **Gold** is correct that FINRA required him to only recommend suitable products to his clients, but this does not change the fact that he was paid only for selling insurance, not for offering financial advice. Moreover, even after becoming a registered representative, ninety percent of **Gold's** sales were of traditional **life** insurance products which did not require the title of "registered representative" and did not require that he comply with FINRA regulations. Joint Appx. 875-77, ¶¶ 22-24.

Testimony from **Gold's** expert David Denmark fails to generate a factual dispute over his duties. Denmark offers observations about registered representatives generally, but he did not interview **Gold** or review his deposition testimony. Denmark Expert Rep., Joint Appx. 316-37. But FLSA regulations are explicit that the determination of an employee's exemption status must be based on the specific employee's actual primary duties, not on his or her title or position. *See Myers v. Hertz Corp.,* 624 F.3d 537, 549-50 (2d Cir. 2010).

The Department of Labor ("DOL") advisory letters put forth by **Gold** also do not raise a genuine factual dispute. One letter concerns individuals who—unlike **Gold**— have Series 7 licenses and are compensated for investment advice. DOL Letter 11/27/06, Joint Appx. 364-71; Joint Appx. 865. In the other letter, the DOL addresses insurance agents and describes two types: (1) outside salesmen-agents whose primary duty is sales; and (2) administrative *146 employees—agents who service insurance products already purchased, and perhaps occasionally make sales in the process. DOL Letter 1/16/09, Joint Appx. 594-95. Although **Gold** argues that he belongs in the second group, his duties place him squarely in the first group. He was not compensated on a salary; he sold insurance directly to clients; he regularly met with clients outside of work; and he was responsible for establishing his own client lists—all duties of the first, outside salesmen group. Joint Appx. 90.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

[1] At the time of his initial filing, liquidated damages were thought not to be available in **New York** law-based class actions. In March 2010, however, in _Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company,_ 559 U.S. 393, 130 S.Ct. 1431, 1438-40, 176 L.Ed.2d 311 (2010), the Supreme Court of the United States held that because federal law and not state procedural law governs class actions in federal court, **New York** law's prohibition on awarding statutory penalties in class actions was inapplicable to suits in federal court.

[2] _See, e.g., Commisso v. PricewaterhouseCoopers LLP,_ No. 11-Civ-5713 (NRB), 2012 WL 3070217, at *5 (S.D.N.Y. July 27, 2012) ((holding that CAFA exception applied based on defendant's submissions regarding the citizenship of its current and former employees as reflected in available human resources records) (motion to dismiss filed within six months of the complaint)); _see also Anirudh v. CitiMortgage, Inc.,_ 598 F.Supp.2d 448, 451-52 (S.D.N.Y.2009) ((relying on defendant's affidavit stating that 96.7% of mortgage loans at issue in suit were **New York co**-op loans to conclude that class of loan borrowers was likely comprised of all **New York** citizens and that therefore home state exception applied) (motion to dismiss filed within five months of the complaint)); _Mattera v. Clear Channel Commc'ns, Inc.,_ 239 F.R.D. 70, 80-81 (S.D.N.Y.2006) ((assuming that two-thirds of the class were **New York** citizens because the entire putative class was employed by a **New York**-based company) (motion to dismiss filed within five months of the complaint)).

[3] We note that a contrary holding would mean that the 2011 amendment would apply retroactively, while the 2009 amendment— which the 2011 amendment builds upon— would not. We do not believe that the legislature intended such an odd result.

[4] We, however, decline to review the district court's decision denying partial summary judgment as to **Gold's** wage deduction claim. Where a district court has denied summary judgment because resolution of such claim requires the adjudication of issues of fact that are inseparable from the merits, the denial of such motion is not immediately appealable notwithstanding the merger doctrine. _See In re State Police Litig.,_ 88 F.3d 111, 122 (2d Cir.1996) ("[A] denial of summary judgment because of the existence of triable issues of fact with respect to the merits is not immediately appealable."); _see also Burke v. Ernest W. Hahn, Inc.,_ 592 F.2d 542, 546 n. 3 (9th Cir.1979) (holding that dismissal for lack of jurisdiction is not a final judgment "into which the denial [of summary judgment] merges"). This is particularly true where our determination would have no preclusive effect on future litigation. _See DiCocco v. Capital Area Comt'y Health Plan, Inc.,_ 159 A.D.2d 119, 123, 559 N.Y.S.2d 395 (N.Y.App.Div.3d Dep't 1990).

Save trees - read court opinions online on Google Scholar.

**EXHIBIT  F**

United States District Court
Eastern District of New York
_____

|  |  |  |
|---|---|---|
| Victor Saldana, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | Case No. 14 cv 4049 (CBA) (RLM) |
| | ) | |
| New Start Group Inc.; Food First, Inc.; and | ) | |
| Food First Housing Development Fund | ) | |
| Company, Inc.; | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## Joint Pretrial Order

**1.     Parties and Counsel**

Plaintiff:          David Abrams
                      305 Broadway Suite 601
                      New York, NY 10007
                      212-897-5821

Defendants:      Thomas M. DeSimone, Esq.
                      44 Wall Street, 12th Fl.
                      New York, NY 10005

**2.     Jurisdiction**

Plaintiff's position:   This matter is subject to federal question jurisdiction in that it is
                            brought pursuant to the Fair Labor Standards Act ("FLSA") and its
                            state law analogues.  Defendant has stipulated to FLSA coverage.

Defendant's position:  Defendant has stipulated to Federal Court jurisdiction.

**[continued on next page]**

3.      **Claims and Defenses**

Plaintiff's Claims:

A.      Fair Labor Standards Act (29 USC 201 et seq):      Plaintiff must show that he
worked overtime hours (i.e. hours in excess of 40 per week) for the Defendants and was
not paid a time-and-a-half overtime premium for such hours.  29 USC 207(a)(1).
Plaintiff must also show FLSA coverage, *see id*., however Defendant has stipulated to
such coverage.

B.      New York Minimum Wage Act (12 N.Y.C.R.R. 141-1.4):  Plaintiff must show
that he worked overtime hours (i.e. hours in excess of 40 per week) for the Defendants
and was not paid a time-and-a-half overtime premium for such hours.  29 USC 207(a)(1).

C.      New York Labor Law (New York Labor Law Section 198):  Plaintiff must show
that the Defendants failed to pay him for all hours worked and/or that Defendants failed
to pay earned wage supplements.

D.      New York Wage Theft Prevention Act (New York Labor Law Section 195, 198):
Plaintiff must show that Defendants failed to give him the required notifications under
the New York Wage Theft Prevention Act.

Defendants' Defenses:

A-D.   From November 14, 2011when Plaintiff Victor Saldana commenced his
employment with New Start Group, Inc. until March 18, 2013 Plaintiff's pay was
calculated on an hourly basis. From March 18, 2013 until the end of his employment in
June 2013, Plaintiff was a salaried employee. In both instances, Plaintiff's pay was
calculated based on the information provided by Mr. Saldana and submitted on the time
sheets prepared by Mr. Saldana as reflected in Plaintiff's Sign In/Time Sheets; Weekly
Time Sheets and Compensatory Time Form.

        The calculations are reflected in the Transaction History Report. The Transaction
History Report breaks down per pay period how Plaintiff's pay was calculated; reflecting
the gross amount of pay, all withholdings, per withholding and the net pay to the Plaintiff
on a per-pay period for the entire time Plaintiff was employed by New Start Group, Inc.

        Additionally, the Transaction History Report sets forth the following changes in
pay status and the date upon which they occurred, to wit; Plaintiff Victor Saldana was
hired by New Start Group, Inc. on November 14, 2011 in the position of Security
Supervisor at the pay rate of fifteen ($15.11) dollars and eleven cents per hour. On July 1,
2012 Plaintiff's pay rate was raised to nineteen ($19.23) dollars and twenty-three cents
per hour. On October 23, 2012 Plaintiff's pay rate was changed to seventeen ($17.59)
dollars and fifty-nine cents per hour. On March 18, 2013, Plaintiff's position changed
from Security Supervisor to Property Manager. At that time, Plaintiff became a salaried

2

employee. Plaintiff held the position of Property Manager for the rest of his employment with New Start Group, Inc.

The Transaction History Report contains hand-written numeric entries on the left side of the document that represent the number of hours Plaintiff worked for a particular pay period along with the aforementioned Sign In/Time Sheets; Weekly Time Sheets and Compensatory Time Form. Policies and/or procedures for recording time; getting permission to work overtime and calculating pay are set forth in the Employee Handbook.

These documents reflect that Plaintiff worked a total of 2,781.50 hours for New Start Group, Inc. inclusive of all vacation and sick time as well all overtime worked while in the employ of New Start Group, Inc.

It is contended that Defendant New Start Group, Inc. properly paid Plaintiff Victor Saldana properly paid for all hours worked including overtime and that in the event Defendant New Start Group, Inc. committed any violation of the FLSA, it was unintentional.

**4.      Damages**

| | |
|---|---|
| Wage Theft Prevention Act: | $5000 |
| Wage Supplements: | $2100 |
| Unpaid wages/ overtime: | $19,500 |
| Liquidated damages: | $19,500 |

**5.      Jury or Bench Trial**

This matter is jury-waived.  Trial is anticipated to last 1 day.

**6.      Consent to Trial by Magistrate Judge**

The parties have not consented to trial by magistrate judge.

**7.      Stipulations**

The parties stipulate to the following:

a.      Plaintiff was employed by the Defendant and the Defendant is subject to coverage under applicable laws, i.e. the Fair Labor Standards Act; the New York Labor Law; the New York Minimum Wage Act; and the New York Wage Theft Prevention Act.

3

8.  **Witnesses:**

Plaintiff's witnesses:            Plaintiff himself.  Plaintiff is expected to testify as
                                  to his days, hours, wages, and accrued wage
                                  supplements, i.e. that he regularly worked extra
                                  time and overtime for which he was not
                                  compensated; that he is owed unpaid wage
                                  supplements; and that he did not receive a WTPA
                                  notification.  Plaintiff is also expected to testify as
                                  to the interrelationship of the parties.

                                  Alfred Thompson (Defendant has agreed to make
                                  Mr. Thompson available without the need for
                                  a trial subpoena.)  Mr. Thompson is expected to
                                  testify as to the Defendant's method of calculating
                                  hours and pay and the relationship of the parties.

Defendant's witnesses:            Alfred Thompson

                                  Augustine Ciracco

                                  Vashty Periatanbi

9.  **Exhibits**

Plaintiff's Exhibits:

1.   Plaintiff's Paystubs

2.   Defendant's Handbook

3.   Defendant's Interrogatory Responses

4.   Defendant's Payroll Records for Plaintiff

5.   Defendant's Time Sheets

6.   Sample Wage Notification Form

7.   Thompson Deposition transcript.

Defendant's Exhibits:

A.   Sign In/Time Sheets

4

B.   Weekly Time Sheets

C.   Employee Handbook

D.   Transaction History Report (with hand-written calculations)

E.   Payroll Work Sheet

F.   Compensatory Time Form

G.   Employment File for Victor Saldana

H.   Disclosure Response

I.   Interrogatory Response

J.   Supplemental Interrogatory Response

K.   Further Supplemental Interrogatory Response

Neither side objects to the other side's exhibits based on Defendant's representation that all of the above materials were produced during discovery.

Respectfully submitted,

David Abrams
 Attorney for Plaintiff
Saldana

305 Broadway Suite 601
New York, NY 10007
Tel. 212-897-5821

Dated:        New York, NY
              September 4, 2015

5

Respectfully submitted,

_____

Thomas M. DeSimone, Esq.

Attorney for Defendants
44 Wall Street, 12th Fl.
New York, NY 10005
Tel. 212-461-2278

Dated:        New York, NY
              September _____, 2015

6

**EXHIBIT  G**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X     Docket No. 14-CV-4049
VICTOR SALDANA,                                                               (CBA) (RLM)

                                              Plaintiff,

                                                                             **AFFIRMATION
                                                                             IN OPPOSITION**

        -against-


NEW START GROUP, INC., FOOD FIRST, INC.,
and FOOD FIRST HOUSING DEVELOPMENT
FUND COMPANY, INC.,

                                              Defendants.
-------------------------------------------------------------------------X


        I, Thomas M. DeSimone, make the following Affirmation under penalty of perjury

and pursuant to 28 U.S.C. § 1746:

        1.      I am the attorney representing the Defendants in the matter referenced

above having first appeared in the action on March 17, 2015.  As such, I am fully familiar

with the facts and circumstances surrounding this litigation.

        2.      This Affirmation is offered in Opposition to the submissions of the three (3)

attorneys representing Plaintiff in support of their respective applications for attorney's fees

attributable to the violation of the Wage Theft Prevention Act ("WTPA") and the Unpaid

Wage Supplement awarded to Plaintiff in the amount of $266.40.

        3.      In addition to misinterpreting the issue of whether the 2014 Amendments to

the WTPA are applicable to this claim, a submission of fees for three (3) separate attorneys

in the amount of $14,017.27 when their combined recovery totaled $3,032.40 is indefensibly

excessive.

I       **WTPA Calculation**

4.      The Defendants rely and refer to the arguments proffered in their Memorandum of Law regarding the application of the 2014 Amendments to the WTPA, which need not be reiterated here. *See Defendant's Memorandum of Law at pgs. 5-6.*

5.      Suffice to say, Plaintiff fails to cite to a single authority for the proposition that there was a legislative intent for the statute to be applied retroactively. Consequently, they fail to make the requisite showing required by New York Courts which have cited to the long held principle that "retroactive operation of statutes is not favored by [New York] Courts. *Gold v. New York Life Ins. Co., 730 F3d 137 (2d Cir. 2013).*

6.      The Second Circuit in *Gold* declined to retroactively apply the 2011 Amendments to the WTPA and specifically stated that retroactive application of a statute requires a clear expression of legislative purpose. Plaintiff has offered none. *See Plaintiff Memorandum of Law "pgs. 3-4".*

7.      The absence of any legislative intent for the 2014 Amendments to be applied retroactively combined with the mandatory authority presented by the Second Circuit Court of Appeals holding in *Gold,* removes any credible argument that the statute should be applied retroactively. Consequently, the maximum fine applicable to this case is $2,500.00 or when combined with the recovery under the Wage Supplement and Liquidated Damages, $3,032.80

8.      Finally, Plaintiff's contention that the "most recent revision" is "remedial" in nature is an inaccurate characterization of the 2014 Amendment. To the contrary there were no fewer than five (5) other substantive changes to the Statute; a repeal of the annual Notice Requirement; the imposition of personal liability on Limited Liability Company Members;

2

the imposition of Successor Liability; the expansion of Contractor Liability and; an increase in Investigation Requirements. Annexed, as Exhibit "A" is a review of the 2014 Amendments.

**I       Legal Fees**

9.       In their submission, Plaintiffs attach the Affirmations of three (3) separate attorneys totaling $14,017.27 representing 36.15 hours of legal work. Given that the total recovery in this case equals $3,032.80 an award of attorneys fees more than 4x this amount cannot be justified.

10.       Similarly incredible is the assertion that in order to establish a violation of the WTPA and an unpaid Wage Supplement claim in the amount of $266.40 required three (3) attorneys to expend 36.15 hours.

11.       As more fully set forth in the Accompanying Memorandum of Law, The United States Supreme Court has identified and cited the "degree of success" as the single most important factor in determining what constitutes "reasonable attorney's fees". *Farrar v. Hobby, 506 U.S. 103 (1992).*

12.       In the present case, Plaintiff failed to make any recovery on either Count I or Count II of the Amended Complaint. The recovery under Count III was $266.40. Plaintiff stands to recover $2,500.00 pursuant to Defendant's failure to provide Plaintiff with the proper notification pursuant to the WTPA. However given the nature of that claim, a fairly minimal legal effort was required to establish this violation.

13.       The foregoing is an important point given that the Second Circuit Court of Appeals has cited to "context" when assessing the "degree of success" in determining an award of attorney's fees. *Barfield v. New York City Health and Hospitals Corporation, 537 F.3d 132, 152 (2d Cir. 2008; Carroll v. Blinken 105 F.3d 79, 81(2d Cir. 1997).*

3

14.     In the Joint Pretrial Order, Plaintiff alleged damages in the amount of

$46,100.00. *See Exhibit "F" in Defendant's Memorandum of Law.* Following the verdict, Plaintiff's

total recovery stands at $3,032.80; an amount less than 10% of what was alleged by Plaintiff.

This does not constitute a high degree of success and in no way justifies $14,017.27 in fees.

15.     The exorbitant amount of the attorney's fees sought is beyond any outer

limit of reasonableness particularly when the nature of the claim and legal work required to

establish same is reviewed in any level of detail.

16.     On February 13, 2015, Plaintiff's Counsel wrote to the Court advising that it

had come to counsel's attention that Defendants failed to provide Plaintiff with a State Wage

Notice as required by the WTPA. *See Exhibit "B" of Defendant's Memorandum of Law.*

17.     The other purpose of this correspondence was to seek Court leave to amend

the Amended Complaint so as to add this claim. Counsel described the litigation at that

point as being in its "preliminary stages".

18.     Defendant's stipulated to the addition of this claim without a motion or even

the service of another Complaint, thus sparing both parties the time and expense associated

with a second amendment of Plaintiff's Complaint. *See Exhibit "C" of Defendant's Memorandum*

*of Law.*

19.     Equally pertinent is the fact that this claim very simply involves the failure of

the Defendant to provide Plaintiff with a one-page notification, which admittedly is required

by the WTPA. That's all that's being claimed. Consequently, the legal fee to which Plaintiff is

entitled is limited to the amount of time expended to establish the Defendant's failure to

provide Mr. Saldana with a one-page notification---something Plaintiff's counsel was aware

of more than one year prior to the trial.

4

20.     Inarguably, the overwhelming majority of the legal work required establishing this claim was complete by the time of the aforementioned Plaintiff's correspondence in February 2015. Once it is determined that the notification was not provided most of the legal work is essentially complete as the single element required to prove a violation has been established.

21.     Confirmation of the violation, to the extent necessary, was accomplished by one question to Mr. Thompson during his deposition as well as the fact that the Defendants were unable to provide this document in its Production of Documents. *See Exhibit "D" of Defendant's Memorandum of Law.*

22.     Notwithstanding this factual backdrop Plaintiff has submitted bills from three (3) different attorneys totaling 36.15 hours seeking $14,017.27. Purportedly it is Plaintiff's contention that this was required to establish the failure of Defendant to provide a one-page document to Plaintiff and establish $266.40 in unpaid wage supplement.

23.     At no point is it ever explained why three separate attorneys were required to establish a violation of the WTPA and/or $266.40 in unpaid wage supplements. This was a one-day trial with limited issues. Three different attorneys is a transparent attempt to run up fees and accordingly should not be countenanced.

24.     Specifically, Defendant's are at a loss as to how Mr. Fingold can represent to this Court that he spent a total of 32.10 hours of legal work on this case with *more than half that amount,* being attributed to establishing the Defendant's failure to provide Plaintiff with a one-page notification and establishing an unpaid wage supplement of $266.40.

25.     Mr. Fingold was required at trial to ask two questions to establish the failure to provide the requisite notification, to wit; to Plaintiff: "Did the Defendants provide you with a copy of this notification upon the commencement of your employment at New

5

Start"? A similarly worded question to Alfred Thompson would confirm Plaintiff's testimony and put the issue to rest.

26.      Those two questions combined with Mr. Abrams letter to the Court and query to Mr. Thompson suffice to establish the WTPA violation. This reasonably represents less than two hours of legal time. That leaves the question of how much should be awarded for the $266.40 Unpaid Wage Supplement claim. Since all three attorneys have an hourly rate in excess of what they proved at trial, the award should be accordingly limited.

27.      While Defendants are certain that Ms. Peacocke is a fine attorney there has been no showing of why her services were required in this case or what unique set of skills she brought to the case. Her Affidavit fails to <u>list one specific task</u> she performed that was in any way necessary to contributing to Plaintiff's highly limited success in this case.

28.      Consequently, Defendants should not be penalized because Plaintiff decided a week before trial that two additional attorneys were required. This amounts to a clear attempt to inflate fees. It is respectfully requested that Defendant's not be charged with any of Ms. Peacocke's fees.

29.      Ms. Peacocke attempts to charge Defendants in full for her Pro Hac Vice motion and obtaining a Certificate of Good Standing. Not only does this have nothing to do with what was established at this trial, she charges 4 hours (!) for these two tasks. According to Ms. Peacocke's Notice of Appearance her office is located in New York City, in point of fact same building and floor as Mr. Fingold. Yet, she claims to be entitled to four hours of legal fees to get herself admitted to this case. Annexed, as Exhibit "B" are the respective Notices of Appearances.

30.    Ms. Peacocke's Affirmation also claims that one half her prep time and one half of her trial time is attributable to Plaintiff's minimal recovery. That is impossible to reconcile.

31.    Ms. Peacocke's time should be dismissed in its entirety.

32.    Mr. Fingold also charges a full one half of his prep time and trial time to what was ultimately recovered; again a violation of wage notification requirement and a $266.40 recovery for Unpaid Wage Supplement---less than 10% of what was claimed in The Joint Pretrial Order.

33.    Unfortunately for Mr. Fingold his chargeable time is limited to what Plaintiff prevailed upon. The Plaintiff here did not prevail on 50% of his claim, he prevailed on less than 10% of what was claimed and accordingly, Mr. Fingold should similarly be awarded less than 10% of his claimed fee, particularly since the claim was established a year before he became involved in the case.

34.    Based on all of the foregoing it is respectfully submitted that the Defendant's Attorney's fees be limited to $1,110.00 which represents 1/3 of Plaintiff's recovery, which is more than reasonable given that over 90% of Plaintiff's claims were dismissed; that the WTPA claim was limited to whether Plaintiff was provided with a one-page document and; a $266.40 recovery for Unpaid Wage Supplement.

Dated: March 25, 2016
New York, New York

_____
Thomas M. DeSimone

**EXHIBIT  A**

A Timely Analysis of Legal Developments

# ASAP®

December 31, 2014

# Key Changes to New York's Wage Theft Prevention Act Become Law

**By Bruce Millman, Stephen Fuchs and Jill Lowell**

After a delay of nearly six months, on December 29, 2014, New York Governor Andrew Cuomo signed into a law a bill (A 8106-C, S5885-B) that amends the state's Labor Law, including the Wage Theft Prevention Act (the WTPA), and the law's application to limited liability companies, contractors and successor employers. The key provisions of the amendments, which become effective on February 27, 2015, (i) eliminate the burdensome annual wage notice requirement; (ii) significantly increase penalties for non-compliance with the WTPA; (iii) expand contractor accountability, successor liability and personal liability for violations; and (iv) create a Wage Theft Prevention Enforcement Account.

An announcement on the Department of Labor's website also states that legislative leaders and the Governor have agreed to a further amendment [not yet enacted] to make the elimination of the annual wage notice requirement effective immediately, so "the Department will not require annual statements in 2015."[1]

## I.   Repeals the WTPA's Annual Wage Notice Requirement

The new law repeals the 2011 amendment to the WTPA that required employers to provide annual wage notices and to obtain employee acknowledgements yearly between January 1 and February 1, thus removing an onerous administrative requirement for employers. Private-sector employers had raised significant concerns about a notice that many believe provides no meaningful benefit to employees. With this change, except for employers in the hospitality industry, the Department of Labor will not enforce the annual notice requirement for 2015, and employers do not have to provide annual wage notices in 2016 or in future years.

Despite the change in the law, hospitality industry employers must issue new pay notices to their employees earning minimum wage in 2015 and 2016. The Department of Labor's Minimum Wage Order for the hospitality industry requires that employees receive a new pay notice each time his or

---

1   New York State Department of Labor, Notice of Pay Rate, *available* at http://www.labor.ny.gov/workerprotection/laborstandards/employer/wage-theft-prevention-act.shtm (last visited Dec. 31, 2014).



Emplóyment & Labor Law Solutions Worldwide®

**Littler Mendelson, P.C.** • www.littler.com • 1.888.littler • info@littler.com
©2014 Littler Mendelson, P.C. All rights reserved.

her pay rate changes, as do Department of Labor guidelines.[2] Because the hourly minimum wage in New York increases to $8.75 per hour on December 31, 2014, and to $9.00 per hour on December 31, 2015, employers in the hospitality industry are still required to issue new pay notices in 2015, 2016, or in any subsequent year in which a statutory wage change takes effect.

Employers, however, still must obtain signed acknowledgments from new employees that the employees have received wage notices in English, and if an employee's primary language is Spanish, Haitian-Creole, Russian, Polish, Chinese or Korean, in the primary language as well, and issue written notices to employees when wage rates or other WTPA-required information changes.[3]

## II.  Increases Penalties for Non-Compliance with the WTPA

The amendments substantially increase penalties for non-compliance with the WTPA. Under the prior version of the WTPA, if an employer failed to provide the required wage notice within 10 days of an employee's hire date, the employee could recover a penalty of $50 for each *week* the violation continued, up to $2,500. The amendments allow employees to recover $50 per *day* for a violation, up to $5,000. Damages available for actions brought by the Commissioner of Labor (Commissioner) have also increased to $50 per day. The Commissioner's recovery, previously uncapped, is now capped at $5,000 per violation.

Likewise, the amendments increase penalties for failing to provide paystubs that comply with the WTPA from $100 to $250 per violation. The statutory cap on damages has increased to $5,000.

If the Commissioner obtains a judgment against an employer, a portion of the judgment must go to the employees harmed. Prior to the amendment, the Commissioner had discretion whether to assign any portion of the judgment to the aggrieved employees.

To help curb repeat offenses, penalties from $1,000 to $20,000 may be imposed upon those found to have violated the law in the previous six years, up from a prior $10,000 statutory cap. For repeat, willful, or egregious violations, the employer may also be required to disclose certain wage data to the Commissioner for posting on the New York Department of Labor's website.

## III. Imposes Personal Liability on Limited Liability Company Members

The amendments provide that the 10 members with the largest percentage ownership interest in a limited liability company (LLC) are now jointly and severally liable for all debts, wages or salaries due and owing to the LLC's employees for their services to the LLC. This provision is virtually identical to a longstanding provision of New York's Business Corporation Law (§ 630), which imposes similar liability on the 10 largest shareholders of a closely held New York corporation.

The term "wages and salaries" is defined broadly to include salaries, overtime, vacation, holiday and severance pay, employer contributions to pension or annuity funds, and any other money properly due or payable for services rendered. Employees may also recover liquidated damages, penalties, interest, and attorneys' fees or costs incurred in successfully pursuing such claims. Before an employee can make a claim against an LLC member for "wages and salaries" due for services he/she provided to the LLC under this provision, the employee must first notify the LLC member in writing of his or her intention to do so, within 180 days of the termination of such services.

Because members are now jointly and severally liable, a member may be required to pay more than his or her pro rata share of wages or salaries due to the employee. That member can then seek contributions from the other members of the LLC in court.

## IV. Imposes Successor Liability and Expands Contractor Liability

The amendments also include language intended to prevent employers from avoiding their liabilities by forming "alter ego" companies. Thus, an employer that is similar in operation and ownership to a prior employer found to have violated New York Labor Law is deemed to be

---

2   12 NYCRR § 146-2.2(b); New York State Department of Labor, Hospitality Industry for Employers: Frequently Asked Questions, *available* at http://www.labor.ny.gov/workerprotection/laborstandards/workprot/MW%20Updates/MW%20Hosp%20ER%20FAQs.shtm (last visited Dec. 31, 2014); Wage Theft Prevention Act Frequently Asked Questions, *available* at http://www.labor.ny.gov/workerprotection/laborstandards/pdfs/wage-theft-prevention-act-faq.pdf.

3   The Department of Labor has issued guidelines stating that – outside the hospitality industry – written notice need not be provided if there is an *increase* in a wage rate that is reflected in the employee's pay stub.

the "same employer if the employees of the new employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors, or if the subsequent employer has substantially the same production process, produces substantially the same products and has substantially the same body of customers."

The amendments impose a new notice requirement on construction industry contractors and subcontractors found to have failed to pay all wages. These employers must now provide written notice of violations to *all* of their employees as an enclosure with employees' wage statements.

## V.  Increases Investigation Requirements and Creates an Enforcement Account

The amendments require that any investigation by the Commissioner of any alleged wage payment violations cover the entire six-year statute of limitations period unless the Commissioner notifies all affected employees otherwise. The amendments also create a "Wage Theft Prevention Enforcement Account" designed to offset the costs in the administration and enforcement of New York Labor Law, to be funded by fines and penalties collected by the New York Department of Labor.

Bruce Millman is the Office Managing Shareholder and Stephen Fuchs is a Shareholder in Littler's New York City office. Jill Lowell is an Associate in Littler's Rochester, NY office. If you would like further information, please contact your Littler attorney at 1.888.Littler or info@littler.com, Mr. Millman at bmillman@littler.com, Mr. Fuchs at sfuchs@littler.com, or Ms. Lowell at jlowell@littler.com.

**EXHIBIT  B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VICTOR SALDANA,

                 Plaintiff,

       v.

NEW START GROUP, INC., FOOD FIRST, INC.,
and FOOD FIRST HOUSING DEVELOPMENT
FUND COMPANY, INC.,

                Defendants.
-------------------------------------------------------------------X

**NOTICE OF MOTION TO
ADMIT COUNSEL PRO HAC
VICE**

Case No.: 14-CV-4049
(CBA)(RLM)

TO: THOMAS M. DESIMONE, Esq.
    44 Wall Street, 12th Floor
    New York, N.Y. 10005
    tmdesimine@gmail.com

PLEASE TAKE NOTICE that upon the annexed affidavit of movant in support of this motion

and the Certificate of Good Standing annexed thereto I will move this Court pursuant to Rule

1.3(c) of the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York for an order allowing the admission of movant, sole practitioner of the

practice of 3 Stone Buildings New York and a member in good standing of the Bar of the State

of New York, as attorney pro hac vice to argue or try this case in whole or in part as counsel for

plaintiff Victor Saldana. There are no pending disciplinary proceedings against me in any State

or Federal court.

                          Respectfully submitted,

                          /s/ Teresa Rosen Peacocke
                          Teresa Rosen Peacocke, Esq.
                          10 Rockefeller Plaza, 16th Floor
                          New York, New York 10020
                          Tel: (212) 713-7680
                          Fax: (212) 713-7679
                          tpeacocke@3sb.law.co.uk

Dated: February 18, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VICTOR SALDANA,

                          Plaintiff,

          v.

NEW START GROUP, INC., FOOD FIRST, INC.,
and FOOD FIRST HOUSING DEVELOPMENT
FUND COMPANY, INC.,

                          Defendants.
-------------------------------------------------------------------X

**AFFIDAVIT OF TERESA
ROSEN PEACOCKE IN
SUPPORT OF MOTION TO
ADMIT COUNSEL PRO HAC
VICE**

Case No.: 14-CV-4049
(CBA)(RLM)

State of New York    )

                     )              SS:

County of New York   )


I, TERESA ROSEN PEACOCKE, being duly sworn, hereby deposes and says as follows:

1.    I am a sole practitioner attorney.

2.    I submit this affidavit in support of my motion for admission to practice pro hac vice in the above captioned matter.

3.    As shown in the Certificate of Good Standing annexed hereto I am a member in good standing of the Bar of the State of New York.

4.    There are no disciplinary proceedings against me in any State or Federal court.

5.    Wherefore your affiant respectfully submits that she be permitted to appear as counsel and advocate pro hac vice in this one case for plaintiff Victor Saldana.

Respectfully submitted,

Teresa Rosen Peacocke, Esq.
10 Rockefeller Plaza, 16th Floor
New York, New York 10020
Tel: (212) 713-7680
Fax: (212) 713-7679
tpeacocke@3sb.law.co.uk

Dated: February 18, 2016

Sworn to before me on this 18th
day of February, 2016

Notary Public

JOSHUA E FINGOLD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6306536
Qualified in New York County
My Commission Expires June 23, 2018

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

|  |  |  |  |
|---|---|---|---|
| VICTOR SALDANA | ) |  |  |
| *Plaintiff* | ) |  |  |
| v. | ) | Case No. | 14-CV-4049(CBA)(RLM) |
| NEW START GROUP INC., et. al. | ) |  |  |
| *Defendant* | ) |  |  |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Victor Saldana                                                                                                                      .

Date:    02/16/2016                                                  /s/ Joshua Fingold
                                                                                      *Attorney's signature*

                                                                          Joshua E. Fingold, Esq.
                                                                            *Printed name and bar number*

                                                                              10 Rockefeller Plaza
                                                                                    16th Floor
                                                                          New York, New York 10020

                                                                                      *Address*

                                                                            josh@fingoldlaw.com
                                                                                  *E-mail address*

                                                                              (212) 837-8490
                                                                                *Telephone number*

                                                                              (516) 977-1292
                                                                                  *FAX number*