**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 6 – 2016 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VICTOR SALDANA,

                Plaintiff,

    -against-

NEW START GROUP, INC.; FOOD FIRST
INC.; and FOOD FIRST HOUSING
DEVELOPMENT FUNDING COMPANY,
INC.,

                Defendants.
-----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-4049 (CBA) (RLM)

**AMON, United States District Judge:**

On February 22 and 26, 2016, the Court conducted a bench trial on plaintiff Victor Saldana's claims against defendants New Start Group, Inc., Food First Inc., and Food First Housing Development Funding Company, Inc. (collectively "New Start Group"), for violations of the Fair Labor Standards Act and New York Labor Law. (D.E. dated Feb. 23, 2016; D.E. dated Mar. 1, 2016). At the conclusion of trial, the Court held that Saldana failed to meet his burden of proof with respect to his claims for unpaid overtime wages and unpaid wages, but met his burden of proof with respect to his claims for unpaid wage supplements under the New York Labor Law and violations of the New York Wage Theft Prevention Act ("WTPA"). (D.E. dated Mar. 1, 2016.) The Court awarded compensatory and liquidated damages of $532.80 for Saldana's unpaid wage supplements, but reserved judgment on damages for the WTPA claim, costs, attorney's fees, and interest. (D.E. dated Mar. 1, 2016.)

1

# DISCUSSION

Before the Court are Saldana's remaining requests for damages, costs, and fees, (D.E. # 49 ("Pl. Mem.")), and New Start Group's objections to those requests, (D.E. # 50 ("Def. Obj.")). The Court will consider each request in turn.

## I.   WTPA Damages

Saldana seeks $5,000 in statutory damages for New Start Group's failure to provide the required wage notices within ten business days of his first day of work, in violation of the WTPA. Although the WTPA was recently revised to allow employees to recover $50 per day for each work day that the violation continued up to a maximum of $5,000, N.Y. Lab. Law § 198(1-b) (as effective February 27, 2015), recovery was limited to $50 per week up to a maximum of $2,500 at the time of Saldana's employment, N.Y. Lab. Law § 198(1-b) (as effective April 29, 2011, to February 26, 2015). Despite Saldana's suggestions to the contrary, (see Pl. Mem. at 3–4), the recent revisions to the WTPA have not been applied retroactively by federal courts, see, e.g., Bosoro v. Am. Comprehensive Healthcare Med. Grp., P.C., No. 14-CV-1099 (ENV) (SMG), 2015 WL 5676679, at *8 n.5 (E.D.N.Y. Aug. 31), adopted by 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015); Galicia v. 63-68 Diner Corp., No. 13-CV-3689 (PKC), 2015 WL 1469279, at *8 n.14 (E.D.N.Y. Mar. 30, 2015) (applying prior version of N.Y. Labor Law § 198(1-d)); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15-CV-2158 (RA) (AJP), 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015) (same). The Second Circuit has made clear that "retroactive operation of statutes is not favored" by New York courts absent a "clear expression of the legislative purpose to justify a retroactive application." Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 143 (2d Cir. 2013) (quoting Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577, 584 (1998)). "[T]o determine if such a purpose exists, courts look to the text of the legislation at issue" and, "[i]f the

2

text is not clear, courts then look to the legislative history." Id. Saldana has pointed to nothing in the text or legislative history of this statute to justify applying the recent revisions retroactively. The Court therefore applies the version of the WTPA effective at the time of Saldana's employment.

Based on the evidence submitted at trial, Saldana worked for New Start Group for 82 weeks. Given that an award of $50 per week for 82 weeks would exceed the statutory maximum, Saldana is entitled to the maximum of $2,500 as statutory damages.

## II. Attorney's Fees

Saldana requests a total of $14,017.27 in fees and expenses for three attorneys who performed work on his case: David Abrams, Joshua Fingold, and Teresa Peacocke. (Pl. Mem. at 3.) Specifically, Saldana claims that Abrams performed 3.4 hours of work at a $400 hourly rate and incurred $876.67 in expenses; Fingold performed 18.95[1] hours of work at a $350 hourly rate and incurred $163.10 in expenses; and Peacocke performed 16.55[2] hours of work at a $350 hourly rate and incurred $155 in expenses. (Pl. Mem. at 3; see also D.E. # 49-1 ("Abrams Affirm."); D.E. # 49-2 ("Fingold Affirm."); D.E. # 49-4 ("Peacocke Affirm.").) The parties do not dispute that Saldana is entitled to attorney's fees and costs under the New York Labor Law. See N.Y. Lab. Law § 198(1-b); id. § 663(1). The parties disagree, however, regarding the extent to which Saldana's attorneys should be compensated.

"In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— [which] creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273,

---

[1] Fingold lists his total hours as 20.7. (See D.E. # 49-2 at 3–4.) However, the Court's calculations of the hours reported total only 18.95 hours.
[2] Peacocke lists her total hours as 12.05. (See D.E. # 49-4 at 2.) However, the Court's calculations of the hours reported total 16.55 hours.

284 (2d Cir. 2014) (quoting Millea v. Metro–N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). "The district court then has discretion to reduce the lodestar to reflect the degree of success achieved at trial." Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434–35 (1983)).

### A. Reasonable Rate

In order to calculate the lodestar, the Court must first consider whether the hourly rates Saldana's attorneys have requested are reasonable. In order to arrive at the reasonable hourly rate, which is the "rate a paying client would be willing to pay," Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2007), courts look to the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). In making this determination, courts may consider the rates awarded in prior cases, their own knowledge of hourly rates charged in the district, and evidence submitted by the parties, Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005), as well as the "nature of [the] representation and type of work involved in a case," Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 184 n.2.

Here, Abrams requests a rate of $400 per hour and Fingold and Peacocke request rates of $350 per hour. Defendants have not specifically objected to these rates, and instead focus their objections on contesting the overall amount of fees requested. The Court, however, must still consider whether each attorney's requested hourly rate is reasonable.

A review of recent cases from this District indicates that the prevailing hourly rates for FLSA cases are $300 to $400 for partners and $200 to $300 for senior associates. See Flores v. Food Express Rego Park, Inc., No. 15-CV-1410 (KAM) (SMG), 2016 WL 386042, at *3 (E.D.N.Y. Feb. 1, 2015) (collecting cases); Marshall v. Deutsche Post DHL, No. 13-CV-1471

4

(RJD) (JO), 2015 WL 5560541, at * 9 (E.D.N.Y. Sept. 21, 2015) (collecting cases). Although the attorneys in this case are solo practitioners, rather than partners or associates at a law firm, the Second Circuit has cautioned district courts against "treat[ing] an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate," and has instead urged the courts to compare solo practitioners to attorneys of comparable skill, expertise, and reputation. McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 n.6 (2d Cir. 2006).

Abrams is a solo practitioner with almost 20 years of experience and 14 years of experience in the area of labor and employment law. (Abrams Affirm. at 4.) Abrams's experience is similar to that of a partner. Because Abrams requested hourly rate of $400 is within the $300–$400 range applicable to partners in FLSA cases, the Court concludes that this hourly rate is reasonable.

Fingold is a solo practitioner with 7 years of experience in the area of labor law and commercial litigation. (Fingold Affirm. at 5.) Fingold's experience is similar to that of a senior associate. Because Fingold's requested hourly rate of $350 is above the $200–$300 range applicable to senior associates, the Court concludes that the requested rate is unreasonable and reduces Fingold's hourly rate to $300.

Peacocke is also a solo practitioner who has been practicing in New York for 12 years. (Peacocke Affirm. at 2–3.) Although Peacocke states that she has "successfully argued cases before . . . the UK's highest court, the House of Lords," she has not provided any indication that she has experience litigating in U.S. federal courts or representing clients in labor and employment disputes. (Id. at 3.) She appears to be a solo practitioner and, based on her years of experience, would be entitled to the rates normally awarded to partners. Given Peacocke's apparent lack of

5

relevant experience, the Court finds that the lowest rate applicable to a partner is appropriate. The Court therefore reduces Peacocke's requested hourly rate to $300.

### B. Reasonable Hours

The Court next turns to whether the hours Saldana's attorneys have submitted are reasonable. In light of the fact that Saldana lost two of the four claims raised at trial, Saldana's attorneys have excluded time spent on those claims. (Pl. Mem. at 5.) In addition to excluding time spent preparing the unsuccessful claims, Saldana's attorneys also excluded 50% of the time spent at trial. (Id.)

New Start Group contends that Saldana's attorneys' requested fees are excessive and are not appropriately limited to the time spent on Saldana's successful claims. When reviewing requests for fees, district courts are permitted to exclude hours that are excessive, redundant, or otherwise unnecessary, as well as hours spent on the unsuccessful claims. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Hensley, 461 U.S. at 434). When reducing hours for these reasons, the court has discretion to either exclude specific hours of reduce the award by a reasonable amount. See Hensley, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); Kirsch, 148 F.3d at 173 ("[I]n dealing with surplusage, the court has discretion simply to deduce a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

New Start Group contends that the requested fees are excessive for three reasons.

First, New Start Group objects to the hours spent preparing Peacocke's pro hac vice application. New Start Group argues, and this Court agrees, that "there has been no showing of why her services were required in this case or what unique set of skills she brought to the case."

6

((D.E. # 50, Ex. G ("DeSimone Affirm.") ¶ 27.) The Court therefore excludes the four hours Peacocke spent preparing her <u>pro hac vice</u> application, the 0.3 hours Fingold spent assisting her with the application, and half of the 0.2 hours Peacocke and Fingold reported as spent discussing the merits of the case and her <u>pro hac vice</u> application.

Second, New Start Group objects to Saldana's use of multiple counsel. New Start Group alleges that given that this was "a one-day trial with limited issues," the use of three different attorneys "is a transparent attempt to run up fees." (<u>Id.</u> ¶ 23.) New Start Group objects that it "should not be penalized because [Saldana] decided a week before trial that two additional attorneys were required." (<u>Id.</u> ¶ 28.) They seek to limit Fingold's request to 10% of his requested fee, (<u>id.</u> ¶ 33), and to exclude Peacocke's time in its entirety, (<u>id.</u> ¶ 31). There is, however, "no <u>per se</u> rule against the use of multiple attorneys . . . and the court is given considerable latitude in determining the reasonableness of the utilization of co-counsel." <u>Macko v. Gen. Motors Corp. Fisher Body Div.</u>, No. 80-CV-716 (HGM), 1988 WL 73446, at *2 (N.D.N.Y. July 12, 1988); <u>see also Seigal v. Merrick</u>, 619 F.2d 160, 164 (2d Cir. 1980). Here, the Court concludes that the use of two attorneys at trial was reasonable, but that the duplicative hours spent introducing additional counsel to the case was unreasonable. To account for this duplication of efforts, the Court reduces Fingold and Peacocke's hours by 10%.

Third, New Start Group broadly objects to the hours as disproportionate to Saldana's recovery. New Start Group notes that Saldana's attorneys seek $14,017.27 of fees when Saldana's combined recovery totaled only $3,032.40. (DeSimone Affirm. ¶ 3.) Courts have, however, rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery, <u>Estrella v. P.R. Painting Corp.</u>, 596 F. Supp. 2d 723, 727 (E.D.N.Y.), <u>aff'd</u>, 356 F. App'x 495 (2d Cir. 2009), and the Court declines to do so here.

New Start Group seeks to further reduce the award based on Saldana's limited success on the merits. New Start Group points to the following facts in support of this claim: that although Saldana sought $46,100 of damages he was ultimately awarded only $3,032.40, less than 10% of the claimed amount, (Def. Opp. at 8); that "the vast majority" of Saldana's claims were found to be without merit, (id.); and that the claims on which Saldana succeeded were relatively simple, (DeSimone Affirm. ¶¶ 22–26). New Start Group specifically objects to Fingold's representation that more than half of his hours are attributable to establishing the WTPA and unpaid wage supplements claims. (Id. ¶ 24.) To determine the "degree of success" obtained in an action, courts are not limited to an assessment of whether the plaintiff prevailed on individual claims. Barfield v. N.Y. City Health and Hosp. Corp., 537 F.3d 132, 152 (2d Cir. 2008). Rather, the "key factors" in this inquiry are the "quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [the] complaint." Id. (internal quotation marks and citation omitted).

The Court agrees that more than 50% of the time spent at trial was focused on the unsuccessful overtime and unpaid wage claims and that the evidence and effort required to prove the successful claims was far less than that necessary to prove the unsuccessful claims. The hours claimed are therefore unreasonable in light of the nature of the claims on which Saldana succeeded and the legal work required to establish these claims. In light of these concerns, the Court reduces Fingold and Peacocke's time requested by an additional 10%, for a total reduction of 20% of the hours requested after the hours related to Peacocke's pro hac vice application are deducted.

For these reasons, the Court concludes that Saldana's attorneys are entitled to the following fees: Abrams is entitled to 3.4 hours at $400 per hour for a total of $1,360; Fingold is entitled to

8

14.84 hours at $300 per hour for a total of $4,452; and Peacocke is entitled to 9.96 hours at $300 per hour for a total of $2,988.

## III.   Costs

Saldana's attorneys also request compensation for a number of costs they incurred. Abrams requests $400 for the filing fee, $174 for service of process, and $302.67 for the deposition of the defendants' principal. (Abrams Affirm. ¶¶ 10–13.) Fingold requests $163.10 for producing the witness binders used at trial. (Fingold Affirm. ¶ 12.) Peacocke requests $155 for the cost of filing her pro hac vice motion and obtaining a certificate of good standing. (Peacocke Affirm ¶ 3.) New Start Group objects to Peacocke's request. (DeSimone Affirm. ¶ 29.)

The New York Labor Law provides that a successful plaintiff may be entitled to costs, N.Y. Lab. Law § 198(1-b); id. § 663(1), which "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients," LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted). The Court concludes that Saldana's attorneys are entitled to compensation for the following expenses: $400 for the filing fee, $174 for service of process, $302.67 for the deposition of the defendants' principal, and $163.10 for preparation of the witness binder. For the reasons discussed above regarding hours requested for Peacocke's pro hac vice application, the Court denies Peacocke's request for the cost of filing her pro hac vice motion and obtaining a certificate of good standing.

## CONCLUSION

For these reasons, the Clerk of Court is directed to enter judgment against the defendants for $3,032.80 ($266.40 for unpaid vacation time, $266.40 as liquidated damages, and $2,500 as statutory damages), post-judgment interest calculated pursuant to 28 U.S.C. § 1961, $8,800 in attorney's fees, and $1,039.77 in costs. Pursuant to New York Labor Law, "if any judgment

remains unpaid upon the expiration of ninety days following issuance of judgment, or ninety days

after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later,

the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law

§ 663(4). The Clerk of Court is directed to enter judgment and close the case.

     SO ORDERED.

Dated: July   5   , 2016                 s/Carol Bagley Amon
      Brooklyn, New York

                                    Carol Bagley Amon
                                      United States District Judge